DALTON MORAN SHOOK INC., Architecture, Plaintiff v. PITT DEVELOP-
MENT COMPANY, a Missouri General Partnership; LEO EISENBERG
COMPANY; LEO EISENBERG & CO., INC.; WILLIAM F. HILL, as
Substitute Trustee for Wachovia Bank of North Carolina, N.A.;
RONALD J. BENNETT, individually; STEPHEN F. HUTCHINSON, in-
dividually; IRVIN B. MAIZLISH, as Trustee of THE IRVIN B. MAIZLISH
LIVING TRUST; ROBERT J. WATERS, individually; C. W. ANSELL, in-
dividually; DEMPSEY J. HYDRICK, JR., individually; FRANK O. PUSEY,
individually; PAUL ANSELL, individually; BARBARA C. BURNS, in-
dividually; GERALD W. SCURRY, individually; WACHOVIA BANK OF
NORTH CAROLINA, N.A.; McDONALD'S CORPORATION; WAL-MART
PROPERTIES, INC.; R & M PROPERTIES, INC.; TOYS "R" US, INC.;
WINN-DIXIE, RALEIGH, INC.; THE CATO CORPORATION; Defendants

No. 923SC1272

(Filed 1 March 1994)

1. **Appeal and Error § 122 (NCI4th) — summary judgment for
one defendant — substantial right — immediate appeal**

Summary judgment in favor of one defendant in an action
to enforce a lien for architectural and engineering services
for construction of a shopping center affected a substantial
right and was immediately appealable by plaintiff where the
issues are identical with respect to each defendant because
plaintiff performed its services pursuant to a single contract
with the original owner, and a successful enforcement of the
lien will require an apportionment among the several defend-
ants. N.C.G.S. §§ 1-277 and 7A-27(d).

**Am Jur 2d, Appeal and Error § 104.**

2. **Mortgages and Deeds of Trust § 5 (NCI4th) — materialman's
lien — deed of trust securing purchase price and construction —
priority**

Under the doctrine of instantaneous seisin, a deed of trust
securing the purchase price of property as well as construction
or development loans is superior to a previously existing

DALTON MORAN SHOOK INC. v. PITT DEVELOPMENT CO.

[113 N.C. App. 707 (1994)]

materialman's lien only to the extent that the deed of trust secures the purchase price of the property.

**Am Jur 2d, Mechanics' Liens §§ 269, 271; Mortgages § 348.**

**Priority as between mechanic's lien and purchase-money mortgage. 73 ALR2d 1407.**

**Priority between mechanics' liens and advances made under previously executed mortgage. 80 ALR2d 179.**

3. *Mortgages and Deeds of Trust § 5 (NCI4th)—* **lien for architectural and engineering services—deed of trust securing purchase price and construction—genuine issue as to amount for construction**

The trial court erred by entering summary judgment for defendant lender in plaintiff's action to enforce a lien for architectural and engineering services for construction of a shopping center where the lender's deed of trust secured not only the purchase price of the land but also obligatory advancements for development and construction of the shopping center, and a genuine issue of fact existed as to the extent to which the deed of trust secured amounts in addition to the purchase price of the land.

**Am Jur 2d, Mechanics' Liens §§ 269, 271; Mortgages § 348.**

**Priority as between mechanic's lien and purchase-money mortgage. 73 ALR2d 1407.**

**Priority between mechanics' liens and advances made under previously executed mortgage. 80 ALR2d 179.**

Appeal by plaintiff from order entered 31 August 1992 by Judge Napoleon B. Barefoot in Pitt County Superior Court. Heard in the Court of Appeals 26 October 1993.

Plaintiff brought this action for breach of contract and to enforce a materialman's lien. Plaintiff alleged that on 4 October 1988, it contracted with defendants Leo Eisenberg Company and Pitt Development Company to provide architectural and engineering services related to the development of a tract of land located in Greenville, North Carolina for use as a shopping center. The property was purchased by Pitt Development Company on 28 December 1988. Pitt Development Company executed a promissory note payable

**DALTON MORAN SHOOK INC. v. PITT DEVELOPMENT CO.**

[113 N.C. App. 707 (1994)]

to Wachovia Bank and Trust Company in the principal sum of $7,718,800.00 secured by a deed of trust on the property. Wachovia disbursed $4,323,251.83 to Pitt for the purchase of the property. The deed of trust also secured additional obligatory advancements to Pitt, which advancements, when added to the amount disbursed for purchase of the property, totaled $7,718,800.00. The deed and the deed of trust securing the note were recorded simultaneously on 28 December 1988.

Between 28 December 1988 and 16 July 1991, four parcels of the property were conveyed by Pitt to Wal-Mart Properties, Inc., R & M Properties, Inc., Toys "R" Us, Inc., and McDonald's Corporation, and these parcels were released by Wachovia from the deed of trust. Pitt thereafter defaulted on the note. At Wachovia's instruction, defendant William F. Hill, the substitute trustee under the deed of trust, instituted foreclosure proceedings on the remaining property on 16 July 1991.

On 4 September 1991, plaintiff filed a claim of lien, pursuant to G.S. Chapter 44A, Article 2, Part 1, against the property which Wachovia was attempting to foreclose, as well as the parcels which had been conveyed to Wal-Mart, R & M Properties, Toys "R" Us, and McDonald's (hereinafter referred to as the other defendants). Plaintiff asserted, in its claim of lien, that 4 October 1988 was the date upon which plaintiff had first furnished architectural and engineering services to the property, that plaintiff had continued to furnish such services until 30 June 1991, and that plaintiff was owed $126,381.78 plus interest for its work. Thereafter, the property subject to the deed of trust was foreclosed and Wachovia, the last and highest bidder at the foreclosure sale, purchased the property for $2,970,000.00.

On 21 November 1991, plaintiff brought this action to enforce its claim of lien against all property included in the original deed of trust. The trial court granted motions by Wachovia and the substitute trustee Hill, for summary judgment and plaintiff appealed.

*Browning, Hill & Hilburn, by W. Gregory Duke, for plaintiff-appellant.*

*Ward and Smith, P.A., by Ryal W. Tayloe and Patricia C. Soraghan, for defendant-appellees.*

DALTON MORAN SHOOK INC. v. PITT DEVELOPMENT CO.

[113 N.C. App. 707 (1994)]

MARTIN, Judge.

## I.

[1] Defendants have moved to dismiss plaintiff's appeal on the grounds that it is from an interlocutory order and is premature. Where an order of summary judgment disposes of fewer than all claims between all parties the order is interlocutory and, ordinarily, is not immediately appealable. *Love v. Moore*, 305 N.C. 575, 578, 291 S.E.2d 141, 144 (1982); *Veazy v. Durham*, 231 N.C. 357, 57 S.E.2d 377, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). The trial court's summary judgment in this case is an interlocutory order because it only disposed of plaintiff's claims against defendants Wachovia and Hill and did not dispose of plaintiff's claims against the other defendants.

There are, however, two instances in which an interlocutory order may be appealed. First, a trial judge may enter a final judgment as to one or more but fewer than all of the claims or parties in a case, which is immediately appealable even though the litigation is not complete as to all claims or all parties, if the trial judge makes an express finding that there is no just reason for delay. N.C. Gen. Stat. § 1A-1, Rule 54(b) (1990); *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 251 S.E.2d 443 (1979); *Brown v. Brown*, 77 N.C. App. 206, 334 S.E.2d 506 (1985), *disc. review denied*, 315 N.C. 389, 338 S.E.2d 878 (1986). In this case, the trial court made no such finding, so no appeal is available under Rule 54(b). Second, an interlocutory order not appealable under Rule 54(b) may nevertheless be appealed pursuant to G.S. § 1-277 and G.S. § 7A-27(d) which permit an appeal of an interlocutory order which (1) affects a substantial right, or (2) in effect determines the action and prevents a judgment from which appeal might be taken, or (3) discontinues the action, or (4) grants or refuses a new trial. An appeal of an interlocutory order is permitted under the "substantial right" exception of the two statutes when the interlocutory ruling deprives the appellant of a substantial right which may be lost or prejudiced if not reviewed prior to final judgment. *Faircloth v. Beard*, 320 N.C. 505, 358 S.E.2d 512 (1987).

Our Supreme Court has held that the right to avoid the possibility of two trials on the same issues can be a substantial right so as to warrant an immediate appeal under G.S. § 1-277 and G.S. § 7A-27(d). *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982). Plaintiff contends that its claims against Wachovia and

Hill involve issues of fact common to its claims against the other defendants and that if this appeal is dismissed, separate trials will be required to determine the identical issues. We agree.

Generally, a party supplying materials or labor, including professional design or surveying services, pursuant to a contract with the owner of real property for the making of improvements thereon, may obtain a lien on the property so improved to secure payment of debts for the materials furnished, labor done or professional services rendered. N.C. Gen. Stat. § 44A-8. To perfect such a lien, the lien must be filed in the county where the property is located within 120 days from the last furnishing of labor, services or materials. N.C. Gen. Stat. § 44A-12. An action to enforce the lien must be instituted within 180 days of the last furnishing of materials or labor. N.C. Gen. Stat. § 44A-13. The priority of a materialman's lien is determined according to the date of the first furnishing of labor, etc., at the site of the improvement. N.C. Gen. Stat. § 44A-10.

Thus, to enforce its lien against the several defendants, plaintiff must establish with regard to each, that it: (1) furnished architectural and engineering services pursuant to a contract with the property owner for which it has not been fully compensated, (2) filed its lien within 120 days of the last furnishing of such services, and (3) filed its action to enforce the lien within 180 days of the last furnishing of such services. The foregoing issues are identical with respect to each defendant because plaintiff performed its services pursuant to a single contract with Pitt.

In addition, should plaintiff successfully enforce its lien against more than one defendant, the lien must be apportioned among the several defendants. In *Dail Plumbing v. Roger Baker & Assoc.*, 64 N.C. App. 682, 308 S.E.2d 452 (1983), *disc. review denied*, 310 N.C. 152, 311 S.E.2d 296 (1984), the plaintiff contracted with the owner of a multi-unit office condominium project to provide plumbing equipment, materials and labor for construction of the project. The owner did not pay the plaintiff the entire amount due. The owner then sold one of the condominium units. The plaintiff filed a lien and a suit to enforce the lien. The owner filed bankruptcy and the plaintiff sought to enforce the lien for the full balance owed against the single unit which had been sold. We held that where the separate units were owned by different parties, the plaintiff's "blanket lien" should be apportioned among the units based upon the proportionate share of labor and materials furnished

to each unit, and its proportionate part of labor and materials furnished to the common area, under the contract that is the subject of the lien. *Id.; see also, Chadbourn v. Williams*, 71 N.C. 444 (1874); 68 A.L.R.3d 1300, 1303.

In the present case, plaintiff furnished architectural and engineering services for the entire shopping center project. Which of these services are attributable to an individual defendant's property and which are attributable to common areas are issues common to plaintiff's claims against each defendant which should be determined in a single proceeding. Thus, dismissal of the present appeal might prejudice plaintiff's right to avoid separate trials involving the identical issues. Therefore, defendants' motion to dismiss plaintiff's appeal is denied.

II.

We now consider the propriety of summary judgment in favor of defendants Wachovia and Hill. Those defendants asserted, as a defense to plaintiff's suit to enforce its lien against that portion of the property conveyed to Wachovia by the foreclosure deed, that the doctrine of instantaneous seisin operated to subordinate plaintiff's lien to Wachovia's deed of trust.

The doctrine of instantaneous seisin is a legal fiction which provides that when a deed and a purchase money deed of trust are executed, delivered, and recorded as part of the same transaction, the title conveyed by the deed of trust attaches at the instant the vendee acquires title and constitutes a lien superior to all others. *Supply Co. v. Rivenbark*, 231 N.C. 213, 56 S.E.2d 431 (1949); *Carolina Builders Corp. v. Howard-Veasey Homes*, 72 N.C. App. 224, 324 S.E.2d 626, *disc. review denied*, 313 N.C. 597, 330 S.E.2d 606 (1985).

> The principle has been uniformly upheld here that a deed and a mortgage to the vendor for the purchase price, executed at the same time, are regarded as one transaction. The title does not rest in the vendee but merely passes through his hands, and during such instantaneous passage no lien against the vendee can attach to the title superior to the right of the holder of the purchase money mortgage.

*Supply Co.*, at 214, 56 S.E.2d at 432. Therefore, the doctrine would subordinate a previously existing materialman's lien to the lien of the purchase money deed of trust. *Carolina Builders Corp.*, at

232, 324 S.E.2d at 631. The doctrine also applies where a third party loans the purchase price and takes a deed of trust to a trustee to secure the amount so loaned. *Supply Co.*, at 214, 56 S.E.2d at 432. However, the doctrine does not apply where the deed and the deed of trust are not simultaneously recorded, *Pegram-West, Inc. v. Homes, Inc.*, 12 N.C. App. 519, 184 S.E.2d 65 (1971), or where the holder of the deed of trust indicates an intent to forfeit the doctrine's protection, as by intentionally allowing a construction loan deed of trust to be recorded prior to his purchase money deed of trust. *Carolina Builders Corp.*, at 232-233, 324 S.E.2d at 632.

In the present case, Pitt Development executed a note and deed of trust in favor of defendant Wachovia and the documents were simultaneously recorded. The deed of trust secures not only the purchase price of the property, but also certain additional obligatory advancements. Plaintiff argues that if the doctrine is applicable where the deed of trust securing the purchase price also secures additional advancements for development or construction purposes, a materialman's lien should be subordinated to the deed of trust only to the extent that it secures the purchase price. We agree.

The application of the doctrine of instantaneous seisin has always been limited to purchase money transactions. *Id.* at 233, 324 S.E.2d at 632. Extending the priority afforded by the doctrine to deeds of trust which secure amounts in addition to the purchase price does not comport with the policy supporting the doctrine.

> The policy supporting the doctrine is that a vendor who parts with property and supplies the purchase price does so on the basis of having a first priority security interest in the property. The vendor who advances purchase money relies on the assurance that he or she will be able to foreclose on the land if the purchase price is not repaid. It is thus equitable and just that the vendor have a first priority security interest and be protected from the possibility of losing both the land and the money in the transaction.

*Carolina Builders Corp.*, at 232, 324 S.E.2d at 631.

Ordinarily, a construction loan deed of trust recorded subsequent to the first visible commencement of construction would not have had priority over plaintiff's materialman's lien. *Conner Co.*

*v. Spanish Inns*, 294 N.C. 661, 242 S.E.2d 785 (1978). Thus, to grant Wachovia priority as to sums it advanced for construction or development purposes simply because those sums are secured by the same deed of trust that secures the purchase money loan, would provide Wachovia with priority it could not otherwise obtain. As discussed above, the purpose of the doctrine is to give first priority to the purchase money lender and prevent the possibility that he will lose the money loaned *and* the land. This purpose is not effectuated where the lender is seeking to secure obligatory advances for costs associated with project development and construction.

In addition, restricting the doctrine's protection to the "purchase money" portion of a transaction is consistent with the trend in the law toward expanding the protection afforded to materialmen. *Carolina Builders Corp.*, at 233-234, 324 S.E.2d at 632. Moreover, construction lenders, who have the resources and bargaining power to require the vendee to obtain lien waivers from suppliers of materials and services, do not need the protection afforded by the doctrine. *Id.* at 234, 324 S.E.2d at 632.

[2] Thus, we hold that under the doctrine of instantaneous seisin, a deed of trust securing the purchase price of property as well as construction or development loans, is superior to a previously existing materialman's lien, but only to the extent that the deed of trust secures the purchase price of the property.

[3] We must now apply our holding to the facts of the present case. To be entitled to summary judgment, a party has the burden of showing, based on pleadings, depositions, answers, admissions, and affidavits, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). The evidence must be viewed in the light most favorable to the non-movant. *Clark v. Brown*, 99 N.C. App. 255, 259-60, 393 S.E.2d 134, 136, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). The movant may meet its summary judgment burden by showing either (1) an essential element of the non-movant's claim is nonexistent, or (2) the non-movant cannot produce evidence to support an essential element of his claim. *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654, 268 S.E.2d 190, 193 (1980).

On the record before us, there appears to be a genuine issue as to the extent to which the deed of trust executed by Pitt in favor of Wachovia secured amounts additional to the property's

purchase price. It is undisputed that Wachovia agreed to loan Pitt an amount not to exceed $7,718,800.00, and that on 28 December 1988, it disbursed to Pitt $4,323,251.83, the purchase price of the shopping center property. The purchase price, as well as any additional advancements that were made, were secured by the deed of trust. Under the terms of the loan agreement, Wachovia agreed to release from the deed of trust the parcel to be sold to Wal-Mart, as well as four other parcels, upon receipt by Wachovia of payments on the loan principal in amounts greater than or equal to the proceeds Pitt received from the sale of those parcels.

The record shows that Pitt conveyed portions of the original tract to Wal-Mart, R & M Properties, Toys "R" Us and McDonald's, and that Wachovia released these parcels from the deed of trust. Based on the terms of the loan agreement, Wachovia's release of these parcels from the deed of trust was predicated upon its receipt from Pitt of principal payments greater than or equal to the proceeds Pitt received from the sale of the parcels.

The deeds from Pitt to Wal-Mart, R & M Properties, Toys "R" Us and McDonald's carried state excise tax stamps totalling $2,754.50. At the time these conveyances were made, 8 February 1989, 6 December 1989, 18 May 1990, and 11 June 1991, G.S. § 105-228.30 (amended 1992) imposed a state excise tax on real property conveyances at the rate of .50¢ per $500 of the consideration or value of the interest or property conveyed. Viewed in the light most favorable to plaintiff, this evidence supports an inference that Pitt received a total of $2,754,500.00 from the sale of parcels to Wal-Mart, R & M Properties, Toys "R" Us and McDonald's and that it paid this amount to Wachovia so that Wachovia would release the properties from the deed of trust. Thus, there is some evidence that Pitt repaid Wachovia $2,754,500.00 of the original purchase price loan of $4,323,251.83, leaving a balance due of approximately $1,568,751.00.

The record further shows that the property which remained subject to the deed of trust was sold at the foreclosure sale for $2,970,000.00. The total of this amount and the amount Pitt paid Wachovia ($2,754,500.00) is $5,724,500, some $1,401,249.00 greater than the $4,323,251.00 Wachovia originally loaned Pitt for its purchase of the shopping center property. Nevertheless, the Final Report and Account of Foreclosure Sale indicates that the sale price left a deficit of $1,188,102.74.

Based on the foregoing evidence and the inferences which may be drawn therefrom, we are persuaded that there exists a genuine issue of fact as to the extent to which Wachovia's deed of trust secured amounts additional to the purchase price of the shopping center property. To the extent that the deed of trust secured non-purchase money sums, it was subordinate to plaintiff's previously existing materialman's lien and summary judgment was improper. Therefore, the judgment below is reversed.

Reversed.

Judges GREENE and JOHN concur.